## BILL OF EXCEPTIONS—DEPOSITIONS—EVIDENCE—ERROR.

[Lucas (6th) Circuit Court, March 22, 1907.]

Haynes, Parker and Wildman, JJ.

### PULLMAN CO. v. WILLIAM WASHINGTON.

1. TIME FOR ADVERSE PARTY TO EXAMINE BILL OF EXCEPTIONS.

   While counsel should be granted the full ten days allowed by statute for examination of a bill of exceptions and the making of objections thereto, a miscalculation by the clerk of court as to the time to which counsel were entitled for examination of the bill, and the premature delivery of it by the clerk to the trial judge for his signature, is not such an irregularity as will deprive a reviewing court of jurisdiction, where it appears that the bill was filed in time by the plaintiff in error and no substantial injury will result from disregarding the irregularity.

   [For other cases in point, see 1 Cyc. Dig., "Bill of Exceptions," §§ 358-436.—Ed.]

2. NECESSITY OF MARKING DEPOSITIONS AT TRIAL.

   Failure properly to mark for identification certain depositions which were used at the trial below, or to attach them to the bill of exceptions, does not prevent their being treated as a part of the bill of exceptions, when it is reasonably certain that they are the same depositions which were used in the court below, and that it was intended they should be made a part of the bill of exceptions but, owing to an inadvertence, were not attached but filed with the original papers in the appellate court.

   [For other cases in point, see 1 Cyc. Dig., "Bill of Exceptions," §§ 300-305; 3 Cyc. Dig., "Depositions," §§ 171-175.—Ed.]

3. ERRONEOUS INTERROGATORIES NOT PREJUDICIAL, WHEN.

   Where interrogatories are submitted to a jury relating to matters of an evidential nature rather than to ultimate facts, no prejudicial error can be based on the receiving of a verdict in which some of the answers to the interrogatories are neither affirmative nor negative, but simply the words "don't know."

4. SUFFICIENCY OF EVIDENCE IN NEGLIGENCE CASE.

   A verdict for damages in a substantial amount for an injury alleged to be due to defective apparatus can not be based on evidence that is vague, speculative and theoretical; and where a verdict is based solely on such evidence, the judgment thereon should be reversed and a new trial granted.

   [Syllabus approved by the court.]

ERROR to Lucas common pleas court.

**Potter & Potter,** for plaintiff in error.

**C. A. Thatcher,** for defendant in error.

## WILDMAN, J.

This is a proceeding in error to reverse the judgment rendered in the court below in favor of the plaintiff below, William Washington,

Lucas County.

for the sum of $5,000. The petition is based upon a claim of personal injuries sustained by Washington in the burning of a Pullman car of which he was porter. The petition charges various matters of claimed negligence, but upon the final trial of the case they were, in the judgment of the trial court, reduced to but one claim of defect in the heating apparatus of the car.

The questions which meet us at the outset of our inquiry are as to the validity of the bill of exceptions, and as to whether or not certain depositions offered upon the trial below are to be treated as a part of the bill. A motion was made to strike the bill of exceptions from the files upon the ground that after its filing in the court of common pleas within the time required by statute, it was prematurely delivered by the clerk to the trial judge for his examination and signature. 'The clerk in this case and in another which we have had occasion to examine seems to have miscalculated the time allowed by law for the filing of objections to the bill of exceptions by adverse counsel, and upon the tenth day of such period, a day which belongs to the adverse counsel for the purpose of examination and filing such objections, the bills were handed to the trial judge.

Our judgment, from an examination of the various statutes, without referring to them more specifically, is, that counsel should have the full ten days for examination of the bill and making objections to it, and until the expiration of that period the bill should not be handed to the trial judge. It does not follow, however, that this irregularity of the clerk is such an irregularity in a jurisdictional matter as will destroy the bill of exceptions. In the legislation in this state with reference to bills of exceptions, and the adjudications of courts thereon, much difficulty oftentimes of a seemingly technical character has been placed in the way of perfecting proceedings in error, by which the review of decisions of lower courts has been sought to be obtained in the court of last resort, or in the intermediate appellate courts. At almost every session of the legislature some changes have been made as to the time of filing bills of exceptions, or various steps of procedure to get them upon the record or to bring them to the consideration of the appellate court; but we are glad to discover in a very recent case decided by the Supreme Court, the case of *Davies* v. *Railway*, 71 Ohio St. 325 [73 N. E. Rep. 213], that some of these matters which have heretofore been deemed jurisdictional are not now so considered by the Supreme Court, and that greater liberality is obtaining in the methods of perfecting bills of exceptions. I read from the syllabus on page 325:

"1. Under the provisions of section 5301 [Lan. 8813], Revised

Pullman Co. v. Washington.

Statutes, as passed October 22, 1902, it is incumbent upon the party taking a bill of exceptions, to file the same in the cause with the clerk of the court within forty days after the overruling of the motion for new trial, or the decision of the court excepted to, where a motion for a new trial is not filed, and having done this he has performed all the duties imposed upon him by the statute."

I will not stop to read the second paragraph or the third, which bear more closely upon other claimed irregularities in the case which were considered by the Supreme Court. I read from page 332 of the opinion of Judge Price:

"What could have been shown to defeat the bill? It is not contended that the document filed with the clerk as a bill of exceptions on the fifteenth of August, lost its identity in any way, or, that it was tampered with by anyone during the interim of seven days." [It appears that the time of receipt of the bill by the judge was some seven days after the time when it was said to have been delivered to him by the clerk.] "The temporary absence of the trial judge might account for the bill's coming into his hands on the seventeenth of September. Whatever it was that caused this lapse of time, it was not the fault of the party filing the bill. He has done his part toward its perfection, and the remaining steps are to be taken by the clerk and trial judge or judges. While the statute commands the clerk to transmit the bill to the trial judge within a certain number of days, and as to the officer the duty is mandatory, yet his neglect to do so within the period prescribed, would not lose the bill, provided it reached the trial judge in time to enable him to allow, sign and return it within the time prescribed for that duty, and it is so allowed, signed and returned. What would be the result if the trial judge should neglect to sign and return the bill within the time fixed by statute? is another and different question not raised in this record and we express no opinion concerning it."

The important part of this reasoning and language of the judge is, that he is treating the filing of the bill with the clerk as the only duty imposed upon the party, the remaining duties being those of the clerk in transmitting the bill to the judge and of the judge in considering and signing and returning it; and Judge Price seems to indicate by the language of the opinion that the bill would not be rendered invalid by the failure of the clerk to perform a ministerial duty, and that it possibly cannot be defeated even by the neglect of the judge to sign it within the statutory time, although this is left as an undisposed of question. On page 334 of the opinion, Judge Price says:

"All the objections made to the bill in the circuit court, as well as

Lucas County.

those presented to us by counsel for plaintiff in error, are purely technical, and under our present law, are not valid. Under our former statutes, several things were required of the excepting party in order to obtain a review of his case. Some of these were held in former decisions to be mandatory and jurisdictional, and if not complied with the bill could not be considered.

"We hope that day is now past. The former practice furnished a yawning sepulcher, wherein were swallowed up the honest efforts of litigants to have their controversies reviewed by a higher court. These lost rights made earnest protest to the general assembly, until it finally acted, and has adopted a more simple method of relief, and has attempted to utterly cast out some of the difficulties which formerly hedged the way to a reviewing court. The legislative intent is plain in the present statutes, and we are not now required to follow as precedents all decisions of the court made under the former legislation."

We think that the spirit of this reasoning justifies the holding of the bill good so far as this one question is concerned, although the clerk did hand or send the bill to the trial judge a day prior to the time when it should have been so transmitted. If probable prejudice to the defendant in error had been shown as a result of the clerk's irregularity, it might be such a matter as would justify a rejection of the bill. But nothing of that kind is indicated in this case. Indeed, it clearly appears that even after the bill passed into the hands of the trial judge, counsel for defendant in error had ample opportunity to examine it, and unquestionably, if the attention of the trial judge had been called to the fact that it was in his hands prematurely, or, without that, if his attention had been called to matters which demanded correction in the bill, he would have given his attention to them and would not have signed the bill without proper correction. But nothing of this kind is claimed. It is not intimated to us in the arguments of counsel or otherwise that there was any objection to the bill as such—that is to say, that it demanded correction in any way—unless perhaps in one instance, in the omission to attach certain depositions, to which I will refer later, and as to those counsel for defendant in error is now insisting that they should not be attached rather than that the bill should be corrected by attaching them.

Should these depositions be treated as a part of the bill? This is another important and possibly vital question involved in the present case. I should say that the depositions had been on file at some time prior to the trial of the case, and remained on file so far as appears on January 26, 1907, when the petition in error was filed in this court.

Pullman Co. v. Washington.

The clerk then, seemingly taking it for granted that depositions were to be treated as original papers in the case, so indicated by lettering them and filed them with the other original papers and pleadings. On February 5 the bill of exceptions was filed in the court of common pleas. The depositions should properly have been still on file in that court, but in this instance as in the other it was the inadvertence of an officer of the court rather than of a party that caused the depositions to be filed in the circuit court. I do not mean that it was the inadvertence of the clerk that the depositions were not attached to the bill of exceptions, because it was no part of the duty of the clerk to attach the depositions to the bill. That was the duty of counsel preparing the bill of exceptions or such agent as counsel might instruct to prepare the bill.

It does not seem, however, to have been deemed absolutely essential, even before this somewhat wide departure from former practice indicated by Judge Price in the case which I have cited, that the exhibits should be in all cases attached to the bill of exceptions. In a case tried by this court before I was a member of it, *Huron Dock Co.* v. *Swart*, 24 O. C. C. 504, in the Erie circuit court, some exhibits were treated as a part of a bill when sufficiently identified by it, although they were not attached to it. The case was carried to the Supreme Court, and the court went a little beyond the decision of the court of common pleas and held as a part of the bill still another exhibit which had not been attached to the bill in the court below. The citation is *Swart* v. *Dock Co.* 69 Ohio St. 574. The court decides as follows:

"Judgment affirmed on authority of *Busby* v. *Finn*, 1 Ohio St. 409, the map and blue print being filed with the bill of exceptions and so described as to leave no doubt of their identity, and the same are therefore held to be a part of the bill of exceptions."

To our minds there is not a particle of question, from the intrinsic evidence of the depositions themselves and also the way in which they were mentioned in the bill and referred to as a part of it, that they were intended to be a part of the bill, that they were introduced in evidence and used upon the trial, and that it is a mere inadvertance that they have not become attached to the bill. It is urged that they are neither attached nor marked as the bill says they are marked, but it is so common a practice to refer to exhibits during the progress of a trial as marked by letter or number when they have not already been so marked before the statements are made that we conclude that the marks which were mentioned during the trial had not been placed upon the depositions, but that those marks were intended to be placed there before the making of a record.

Lucas County.

As I have said, the intrinsic evidence afforded by an examination of the depositions themselves in connection with the statements in the bill of exceptions as to what occurred upon the trial, and what was shown, is sufficient to justify the conclusion that they were the same depositions that were used upon the trial, if indeed anything to the contrary were claimed by counsel. It is not asserted to us that they are not the same depositions. It is claimed by counsel for plaintiff in error that thy are the depositions that were offered, and while we can-not amend a bill of exceptions, or take oral testimony to supplement one or supply an omission in it, still we think we are justified under all the circumstances in concluding that these are the depositions that were intended by the bill of exceptions and that they are as clearly identified as were the exhibits in the Swart case. I am speaking now from information received from my associates who were members of the court at that time and I am not depending upon any recollection or knowledge of my own, although the facts in the Swart case finally decided in 69 Ohio St. 574 are fully set forth in the reported opinion of the circuit court, *Huron Dock Co.* v. *Swart, supra.*

This brings us to a consideration of the record as disclosed by the bill of exceptions. There are two or three claimed errors. So far as the charge is concerned and the special instructions given by the trial judge to the jury, we find no exceptions in the bill. Some earnest protest is made against the receiving of the verdict, or rather the answers of the jury to some interrogatories by the statement that they did not know. The words "don't know" are given as an answer to some of these interrogatories, and it is claimed that it was error to receive these findings—that the jury should have been required to answer either in the affirmative or negative, or other definite and positive form, the interrogatories put. We think, however, that the matters to which these questions were addressed were of an evidential nature rather than involving ultimate facts, and that it was proper enough for the jury to answer as they did. At any rate, no claim of prejudicial error can be based upon answers of this kind where the interrogatories are not such as are contemplated by the statute as to ultimate facts necessarily involved in the conclusions to be embodied in the general verdict.

The important matter presented by this entire record and one which has demanded and has received at our hands several days of earnest consideration and discussion, is the question whether the verdict for $5,000 obtained by the plaintiff in the court below is justified by the evidence. It would not be profitable to attempt any extended

Pullman Co. v. Washington.

review of the evidence disclosed in this bulky package before me. The trial probably took a considerable time and the testimony and other evidence made a very voluminous record; but our judgment, from an examination of it all from cover to cover, is, that the verdict is not justified by the evidence. There is a conflict of evidence, to be sure, and one which clearly entitled the plaintiff below to have the case go to the jury for its determination; but the matter is still left in the hands of a reviewing court to determine whether the verdict is or is not manifestly against the weight of the evidence.

The claims of the plaintiff, as I have said, were finally reduced by the consideration of the trial judge substantially to one, that there was a defect in a so-called drip valve, which was a part of the apparatus for the heating of the car, and that by reason of that defect there had been an escape of water unnoticed, but nevertheless a substantial and considerable escape of water, from the coils which were found within the heater; that upon a fire's being kindled in the heater, the result of the coils' being empty of water, was such that more heat was disseminated through the iron of the heater and communicated to the combustible materials in the car; that a conflagration was thereby caused, and that the injuries received by Mr. Washington, the plaintiff, in his escaping from the car or being burned while in the car were the proximate result of this first defect to which I have referred.

The evidence offered in support of the theory that the heater was defective in some way is perhaps cogent. There is the evidence in the depositions to which I have referred, and the testimony of the witness, Demay, that there was a defective condition in this heating apparatus which had existed for some time prior to the injury. It does not seem to have been indicated to anyone's mind at that time that the defect was of a character that would cause anything but discomfort to passengers. It was not such a defect perhaps as would lead to the idea that there would be danger to the car itself by its destruction from fire; but merely one which lessened the heating capacity of the apparatus.

We are not prepared to say, however, that a defect of this character was not such as to justify a claim that the attention of the company should have been called to it so as to endeavor to remedy the defect, to save the comfort of passengers, and that in so doing they might have discovered the specific defect, the cause of the failure to heat the car sufficiently, and might thereby have been led to a reasonable apprehension that there might be danger to the car itself. But this view is somewhat vague and uncertain. The whole evidence of the plaintiff, when we get beyond the mere fact that there was some defect in the heating apparatus

Lucas County.

itself at some time prior to the burning of the car, is equally vague, speculative and theoretical, There is more or less theorizing on the other side, but our view is, that there is some testimony, which, unless it be capriciously and arbitrarily rejected, is of sufficient significance to justify the finding that immediately after the conflagration and immediately before there was such quantity of water in what is known as the expansion drum attached to this heater as to prove conclusively that the coils themselves must also have contained water.

It is very forcibly argued by counsel for the defendant in error that the defect to which Mr. Demay had called attention, if it be a defect, which is denied by some of the experts called on the other side, consisted of a three-sixteenth-inch aperture in the drip valve instead of one-eighth of an inch, or two-sixteenths, which would result in a loss of water through this drip valve to a considerably larger extent than would be indicated at first blush to a nontechnical mind; in other words, that the proportion of loss is as nine to four, the area of the circle increasing with the square of the diameter. And it might be added to reinforce this suggestion, a matter which has occurred to me and which I think is susceptible of scientific demonstration, that the smaller the aperture the greater the friction, so that with a larger diameter not only would there be a larger capacity for escape but also a chance for a more rapid flow. But however this may be, we are not inclined to think that the other evidence, somewhat connected with this, as to the amount of water that was drawn from the heating pipes of the car immediately after the fire, is at all satisfactory or conclusive in the way suggested by counsel for defendant in error. It seems that two plugs were opened, or two holes were opened to enable the draining of these pipes after the fire, and the amount of water that was so drawn off is to be determined only from the estimates or guesses of the witnesses as to the time which it took for the water to escape, something that is as unreliable almost as any kind of evidence, unless it be the evidence of witnesses as to conversations.

Immediately after the fire, and immediately before, according to the testimony of witnesses, an examination was made of the expansion drum attached to the heater, and it is said to have been found about half full of water. I have already stated that if that be true, it is inconsistent with the theory of the defendant in error that the coils were empty at the time of the fire. There is other evidence, practically undisputed, that the zinc bounding or defining the enclosure in which the furnace part of the heater was placed was either burned or melted away in patches at some places, and there is some evidence, theoretical to be

Pullman Co. v. Washington.

sure, that before this could be accomplished, the coils themselves, if they were empty of water, would have been melted. We do not deem this evidence very conclusive one way or the other, but we do feel that there should not be an arbitrary and capricious rejection of the testimony of witnesses, which stands unimpeached and consistent with itself, that there was water in the expansion drum in such quantity as to evidence that the coils themselves were supplied with it. We think this evidence should have been considered by the jury, and taking the evidence in its entirety, and without further comment upon it—and very much more might be said—we think that the verdict is not justified by the evidence. For this reason and no other the judgment of the court below will be reversed and the case remanded for a new trial.

**Haynes** and **Parker, JJ.,** concur.

---

## JUDGMENT AND DECREES.